IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOSHUA CALHOUN | § | |
| VS. | § | CIVIL ACTION NO. 6:21cv279 |
| LAMORRIS MARSHALL, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRTE JUDGE

Plaintiff Joshua Calhoun, a prisoner of the Texas Department of Criminal Justice (TDCJ), filed a pro se complaint for alleged violations of his civil rights in prison in July 2021. (Dkt. #1.) The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. (Dkt. #8.)

Plaintiff filed an amended complaint on August 19, 2021, at the Court's instruction. (Dkt. ##3, 10.) The Court ordered service and a response from Defendants on August 23, 2021. (Dkt. #34.) Defendants initially indicated that they did not intend to file a motion for summary judgment (Dkt. #103), and the Court appointed counsel to represent Plaintiff on February 9, 2022. (Dkt. #107.) Defendants subsequently sought and obtained permission, over Plaintiff's opposition, to file an untimely motion for summary judgment on the issue of whether Plaintiff exhausted his administrative remedies before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Dkt. ##110, 115, 117.) In its order granting leave to file the motion for summary judgment, the Court required the parties to exchange discovery requests on the issue of exhaustion within fifteen days and to exchange responses to those requests within fifteen days of service. (Dkt. #117 at 3.) Neither party thereafter filed any motion concerning the need for additional discovery.

Now before the Court is the Defendants' amended motion for summary judgment limited to the exhaustion of administrative remedies. (Dkt. #124.) Plaintiff responded in opposition to the motion through counsel, and the parties have filed a reply and a sur-reply. (Dkt. ##126–28.) The motion is fully briefed and ripe for review. For the reasons explained below, the undersigned recommends that the motion be granted, and that Defendants be granted summary judgment without prejudice.

## I.  Background

Plaintiff alleges that he filed an institutional complaint on May 13, 2021, asserting that his life was in danger (LID) in the TDCJ Michael Unit from Defendant LaMorris Marshall. (Dkt. #10 at 6.) He says that Defendant Marshall wrongly investigated the LID complaint himself, which "hinder[ed] an official investigation" and kept Plaintiff's complaint from being reviewed by the proper authorities. (*Id.*) Plaintiff alleges that Defendant Townsend assisted in this impropriety by "basicly [sic] co signing on Marshall's false findings," which resulted in Plaintiff's being "forced out of protective custody" on May 25, 2021. (*Id.* at 6–7.) Plaintiff says he informed Defendant Townsend on June 6, 2021, that Marshall had improperly conducted his own investigation and that Townsend said he "didnt [sic] give a damn" and took a photo of Plaintiff, saying he was "taking a picture of a dead man." (*Id.* at 10.)

On May 25, 2021, Defendant Johnson and another officer forced Plaintiff to move from protective custody in building 11 to building 3. (*Id.* at 7.) Unknown inmates in building 3 verbally threatened Plaintiff, causing him to pull away, and Defendant Johnson tripped him and slammed him to the floor head-first, causing an injury that required stitches. (*Id.*) Plaintiff was then placed back in building 11 without any hygiene supplies and was "forced to eat & use the bath room with [his] hand." (*Id.*)

2

Plaintiff alleges that on June 7, 2021, Defendant Marshall interrupted a dental procedure with his harassment, causing Plaintiff to be removed from the dentist's office with a "half pulled now broken tooth." (*Id.* at 7.) Later that day, Plaintiff says Defendant Page sprayed him repeatedly with pepper spray, Defendant Adams jumped on him and punched him, and Defendant Chapman banged his head into the sidewalk.[1] (Dkt. #10 at 8.) Defendants took Plaintiff to a "cage inside medical," where they mocked and spat on Plaintiff. (*Id.* at 9.) Plaintiff suffered a chemical burn from the spray due to a 30-45 minute delay before he was taken to shower, and he had to be taken to a hospital for stitches. (*Id.*) Upon his return to the Michael Unit, he was not given any hygiene products, a fan, or his legal documents. (*Id.*)

Plaintiff alleges another use of excessive force on June 11, 2021, when Defendant Chapman slammed Plaintiff's left hand in his tray slot, causing his hand to swell. (*Id.* at 10.) He says Chapman also denied him lunch on June 11 and 12, 2021. (*Id.*) Finally, Plaintiff says that he had to remove his broken tooth himself on June 13, 2021, because unnamed staff refused to "do anything" about his extreme pain. (*Id.*)

## II. Defendants' Motion and Supporting Evidence

Defendants assert that Plaintiff failed to exhaust administrative remedies for any of his claims prior to filing suit. (Dkt. #124.) In support of their motion, Defendants filed copies of all of Plaintiff's grievances processed from March 1, 2021, through February 24, 2022, certified under oath by the TDCJ records custodians for the Inmate Grievance Department. (Dkt. #124-2 at 2, 119.) The grievance records establish that Plaintiff filed two relevant Step 1 grievances, both of which concerned Defendant Marshall's conducting the LID investigation on himself and

---

[1]    Plaintiff originally named an Officer Davis in connection with this event but later determined that was a mistake and substituted Defendant Chapman in Davis's place. (Dkt. #44.)

Defendant Johnson's use of force on May 25, 2021, as he was moving Plaintiff out of protective custody. (Dkt. #124-2 at 160–201.)

Specifically, Plaintiff signed the first grievance on May 27, 2021, two days after the first use of force alleged in this case. (Dkt. #124-2 at 161.) He complained about Marshall's improper investigation, Johnson's May 25 use of force in moving him out of protective custody, and the unsanitary conditions to which he was subjected upon his return to building 11. (*Id.* at 160–61.) TDCJ grievance officials marked it received on June 2, 2021,[2] and numbered it grievance #2021117264. (*Id.* at 160.) It was marked with a "date due" of July 12, 2021 (*id.* at 160), consistent with the TDCJ Offender Handbook, which allows up to 40 days "from the date the unit grievance office receives the Step 1 form to respond." (Dkt. #124-3 at 5.) Grievance investigation documents produced by Defendants indicate that the grievance was investigated by Maggie Price, Investigator III, who exchanged multiple emails about the grievance and gathered relevant information. (Dkt. #124-2 at 163–79.) On July 13, 2021, she acknowledged in an email that a response to the grievance was "overdue" and that necessary investigation materials had not yet been submitted to her. (*Id.* at 167.) On July 29, 2021, Assistant Warden Michael Collum signed a response on the grievance form to the effect that the grievance was not substantiated and no further action was warranted. (*Id.* at 161.) The grievance was stamped with July 30, 2021, as the date it was returned to Plaintiff. (*Id.* at 160.)

Meanwhile, Plaintiff had already signed a second Step 1 grievance on June 28, 2021, about Marshall's allegedly improper investigation and Johnson's use of force, plus an allegedly improper disciplinary conviction arising from the use-of-force incident. (Dkt. #124-2 at 180–81.) This

---

[2]     The Court takes judicial notice that May 31, 2021, was Memorial Day, so the holiday weekend may have contributed to the delay between Plaintiff's signing the grievance and grievance officials' processing its receipt. Some amount of time necessarily passes between submission of a grievance and its arrival at its destination, and no party has suggested that a delay of six days is excessive in this case.

grievance was stamped received by the office on June 30, 2021, and marked as grievance #20211129833. (*Id.* at 180.) This grievance was also investigated by Maggie Price. (*Id.* at 183.) She gathered the relevant records and statements, which are included in the record. (*Id.* at 183–201.) On July 27, Warden Marshall signed a response on the grievance form indicating that Plaintiff's disciplinary conviction and punishment were valid and no further action was warranted. (*Id.* at 181.) The grievance was stamped as returned to Plaintiff on July 28, 2021. (*Id.* at 180.)

According to Defendants, Plaintiff failed to file a Step 2 appeal of either grievance and did not properly file any other grievances relevant to his exhaustion of the claims pending in this case.[3] Further, they argue, based on the dates of the submission and return of the grievances discussed above, that even if Plaintiff had submitted any Step 2 appeals of the relevant grievances, they would not satisfy the PLRA's exhaustion requirement because they would necessarily have been submitted after he had already filed his lawsuit.

## III. Plaintiff's Response and Evidence

Plaintiff asserts that he never received the response to the first relevant Step 1 grievance, #2021117264. (Dkt. #126 at 3.) He says the failure to return that Step 1 grievance explains his filing the second Step 1 grievance and another grievance that was not included in Defendants' production: a Step 2 grievance that was an attempt "to 'bypass Step 1 for fear of further retaliation." (*Id.* at 2–3.)

Plaintiff attaches the Step 2 grievance to his response. (Dkt. #126-4.) Plaintiff's signature on it is dated July 2, 2021, and he asserted in it as follows:

---

[3]     Defendants acknowledge that Plaintiff also filed grievance #2021136850 against a Major Schinault about alleged retaliation for his LID complaint against Marshall, and that he complained in the Step 2 appeal of that grievance that Marshall himself had responded to the Step 1. (Dkt. #124 at 7.) But they correctly point out that this grievance was at best tangential to the claims against Marshall in this case, and that Plaintiff submitted it after filing this lawsuit. (*Id.*; Dkt. #124-2 at 271–78.)

> I am writing you this to *Bypass* Step 1 & Michaels Unit in (<u>Fear</u>) of further retaliating I filed LID, OPI, on 5-13-21 on LaMorris Marshall TDCJ Employee on 5-24-21 Marshall conducted his own investagation [sic]. I filed due to the fact threats, harassing statements [sic] from officers and inmates never at any point has OIG spoke with me. This alone is misuse of official authority and information "Lonnie Townsend" was notified as well dirrectly [sic] on 6-6-21 he stated I wouldnt [sic] make it out alive anyway. On 6-28-21 court was held in 12 Building on the back of case it clearly stated please, please contact O.I.G The top ranking authoritys of Michaels Unit both have conspired to tamper with official documents & information I have all suporting [sic] documents to confirm these claims. But also has created life endangerment that clearly "if" TDCJ rules & guidelines would have been followed I would have never been assaulted either time.

(*Id.*) This document is stamped "Jul 07 2021," but it was not given a grievance number or an official "received" date in the "office use only" box on the form.

Plaintiff has also filed a TDCJ communication memorandum to him from the Central Grievance Office dated July 12, 2021. (Dkt. #126-5 at 1.) It also bears an unexplained stamp of "FEB 16 2022." (*Id.*) The form memorandum says its subject is "Improperly Submitted Grievance" and states that Plaintiff's "documents received in this office have been reviewed and a response is indicated below." (*Id.*) The boxes checked below indicate that a copy of the instructions pertaining to grievances was enclosed with the memo, that grievances must be submitted through the Unit Grievance Investigator within 15 days of the incident, and that "[t]his Step 2 appeal cannot be processed without the corresponding **original**, answered Step 1 grievance." (*Id.* (emphasis in original).)

Finally, Plaintiff has filed two I-60 inmate request forms submitted and answered after he was moved from Michael Unit to Telford Unit in August 2021. (*See* Dkt. #37 (notice of change of address dated August 17, 2021).) In one of them, Plaintiff said he had "a number of Step 1" grievances that were "well over time" and sought the return of his grievances. (Dkt. #126-5 at 3.) The TDCJ response identified two pending grievances: grievance #2022019846, to which response

6

was due November 29, 2021, and grievance #2022006205, to which the response would have to come from the Michael Unit and would be forwarded to him when it arrived. (*Id.*)

In the other I-60, Plaintiff asked specifically about grievance #2021117264, the first Step 1 grievance relevant to this case. (Dkt. #126-5 at 5.) He said he had "received a copy in a court order but it was never ans[w]ered" and asked "can you explain?" (*Id.*) The response was: "It closed 7/30/21 on the Michael Unit. You did not leave Michael until 8/17/21 It should have been returned to you before you left." (*Id.*)

Plaintiff asserts that his evidence establishes that his Step 1 grievance "was not responded-to in a timely manner" and "[t]herefore, no Step 2 is required, nor is there any exhaustion issue." (Dkt. #126 at 7.) Specifically, he says "[t]here is no logical explanation" for that response "except that the grievance was not returned." (Dkt. #128 at 1.) He argues that "at a minimum, there are factual issues on that point that need to be presented to the Jury." (Dkt. #126 at 7.)

Plaintiff maintains that these documents establish his exhaustion of his claims against Defendants Marshall, Johnson, and Townsend. (Dkt. #126 at 7.) With regard to his claims against the other Defendants, he says:

> Although the undersigned is unable to locate any grievances in the applicable time period that reference the others by name directly, the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation. *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). And a grievance can sufficiently identify a person even if it does not provide an actual name - functional descriptions and the like are acceptable. *See Johnson v. Johnson*, 385 F.3d 503, 523 (5th Cir. 2004). Clearly the Step One references at least "Two officers" who were allegedly "unprotected," and had the Unit done a proper investigation of the issue, the Unit and the Texas Department of Criminal Justice would have been alerted to the problem and the officers involved, including all named defendants herein.

(*Id.* at 7–8.)

Plaintiff asserts that the absence from the Defendants' discovery production of the documents he has added to the record indicates that Defendants have not produced all relevant grievance documents and that additional discovery should be required before ruling on the motion for summary judgment. (Dkt. #126 at 1–2; Dkt. #128 at 2.) He further complains of ongoing retaliation "because of these issues" and seeks a hearing to provide "sunlight" and lead to "a fairer outcome." (Dkt. #128 at 2.)

## IV. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

**V. Discussion and Analysis**

Congress enacted the Prison Litigation Reform Act (PLRA) in 1996, which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). It is well-settled that inmates must exhaust any and all administrative remedies before proceeding in federal court. *See Gonzalez v. Seal*, 702 F.3d 785, 787 (5th Cir. 2012) (explaining that pre-filing exhaustion is both mandatory and non-discretionary). The purpose of the prison exhaustion requirement is to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *See Bisby v. Garza*, 342 F. App'x 969, 971 (5th Cir. 2009); *see also Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013) (explaining that the primary purpose of a grievance is to give prison officials fair opportunity to address the problem that will later form the basis of the lawsuit; *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004) (interpreting the exhaustion requirement in light of its purposes, which "include the goal of giving officials time and opportunity to address complaints internally.") (internal quotations and citation omitted).

The exhaustion provision was unanimously upheld by the Supreme Court in *Booth v. Churner*, 532 U.S. 731 (2001). The Supreme Court subsequently held that exhaustion is mandatory and that the requirement will not be excused when an inmate fails to properly exhaust his administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Proper exhaustion means that an inmate must not only pursue all available avenues of relief but must also comply with all administrative deadlines and procedural rules. *Id.* at 90–91; *Wilson v. Epps*, 776 F.3d 296, 299–300 (5th Cir. 2015) ("This circuit has taken a 'strict' approach to § 1997e's exhaustion requirement, under which prisoners must not just substantially comply with the prison's grievance procedures, but instead must 'exhaust available remedies properly.'"). The Fifth Circuit has reiterated the principle that "[p]re-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The Supreme Court has reiterated that "[t]here is no question that exhaustion is

mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

The Fifth Circuit has explained the procedures to be followed with regard to claims of failure to exhaust:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Dillon v. Rogers*, 596 F.3d 260, 272–73 (5th Cir. 2010). A prisoner's failure to exhaust certain claims before filing suit in federal court is fatal to those unexhausted claims only. *See Jones*, 549 U.S. at 924 ("There is no reason failure to exhaust on one [claim] necessarily affects any other.").

A.  <u>May 2021 Claims Against Marshall and Johnson</u>

Pursuant to the standards above, the question before the Court is whether there is a genuine issue of material fact regarding whether Plaintiff exhausted the administrative remedies for any or all of his claims before he filed suit on July 19, 2021.[4] There is not.

---

[4]  In their casual references to a filing date of July 19, 2021 (Dkt. #124 at 1; Dkt. #126 at 6), all parties ignore the prisoner "mailbox rule," under which pleadings submitted by pro se prisoners are deemed filed when the prisoner hands his pleading over to prison officials for mailing to the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995) (extending "mailbox rule" to prisoner's pro se complaint in Section 1983 cases); *Houston v. Lack*, 487 U.S. 266 (1988) (establishing rule that prisoner's document is deemed filed upon delivery to prison authorities). Pursuant to that rule, the complaint filed by Plaintiff—who was pro se at that stage of the case—would be considered filed sometime before July 19, 2021. Specifically, it was filed on either July 7, 2021, when he signed it, or July 16, 2021, when it was postmarked, or on any date between those two dates. (Dkt. #1 at 5; Dkt. #1-1.) Under some circumstances, in the absence of evidence establishing when a prisoner submitted his pleading to prison officials for mailing, a district court will infer that he delivered it on the date he signed it. *See Temple v. Black*, No. 6:17CV672, 2018 WL 3453485, at *3 (E.D. Tex. June 26, 2018), *report and recommendation adopted sub nom. Anderson v. Black*, No. 6:17CV672, 2018 WL 3438791 (E.D. Tex. July 16, 2018) ("The Court assumes the complaint was placed in the prison mail system on October 31, 2017, the date on which Plaintiff signed the complaint."). But there is some question about whether any inference from the mailbox rule should apply in the context of an exhaustion dispute where it would disadvantage the plaintiff. *See Fiorito v. Anderson*, No. 518CV00506JFWKES, 2021 WL 6103521, at *4 (C.D. Cal. July 30, 2021) (observing that "the Ninth Circuit has disapproved of applying the prison mailbox rule to a prisoner plaintiff's detriment in this

1.  Grievance #2021117264

Plaintiff's first relevant Step 1 grievance was about Marshall's self-investigation on Plaintiff's LID complaint and Johnson's May 25, 2021 use of force. (Dkt. #124-2 at 160–61.) That grievance was received in the unit grievance office on June 2, 2021. (Dkt. #124-2 at 160.) Pursuant to the TDCJ Offender Handbook, a response to the grievance was due 40 days later, on July 12, 2021. (Dkt. #126-6 at 3 ("The Step 1 process may take up to 40 days from the date the unit grievance office receives the Step 1 form[.]").) The July 12, 2021 due date was written on the grievance form. (Dkt. #124-2 at 160.) But it is undisputed that the grievance response was not delivered to Plaintiff until July 30, 2021, at the earliest. (Dkt. #124-2 at 160.) TDCJ grievance regulations advise prisoners that additional time may be required to respond to a grievance and that they will be informed in writing of any extension. (Dkt. #124-3 at 5.) But there is nothing in the record establishing that Plaintiff was advised that the response date to his grievance had been extended.

Thus, the proof submitted by Defendants indicates that Plaintiff's complaint was filed in the period of time between the date the first relevant Step 1 grievance should have been returned and the date on which it apparently was returned. Defendants do not address the significance of that timing. They do not acknowledge that the response was weeks late or explain with any specificity what Plaintiff's obligations were at that point under the law or the TDCJ grievance system. They simply insist that the grievance was returned on July 30, that Plaintiff's failure to

---

context"). Moreover, in the context of Defendants' summary judgment motion, the Court must make any inferences in favor of Plaintiff, and the burden is on Defendants to establish the facts in their favor. In the absence of any briefing from the parties on this point or any evidence to establish when TDCJ actually delivered his complaint to prison authorities for mailing—and because the issue is not ultimately critical to the outcome of the motion—the Court accepts the parties' agreement that, for the purposes of this motion, Plaintiff filed his complaint on July 19, 2021.

follow up with a Step 2 appeal from that response was "fatal," and that "even if [Plaintiff] truly never had received it, he was still required to fully exhaust before filing suit." (Dkt. #127 at 1–2.) They reiterate that Plaintiff filed suit "before even receiving a response to the Step 1." (*Id.* at 3–4.)

Plaintiff does observe that his first Step 1 grievance was not "responded-to in a timely manner." (Dkt. #126 at 6.) He says the determinative question is "does an inmate exhaust his administrative remedies when the Texas Department of Criminal Justice does not respond to his grievance?" (*Id.* at 1.) And his proposed answer to that question is that "[a] prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired." (*Id.* at 5 (quoting *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999)).)

That statement is correct—but only when the failure to return a timely response occurs at the <u>final step</u> of the state's grievance process, as the Fifth Circuit clarified years after *Powe* was decided:

> Hicks contends that the exhaustion requirement was satisfied because TCJ officials never responded to his grievances, but courts may no longer read a futility exception into the exhaustion requirement. *Booth v. Churner*, 532 U.S. 731, 739–41 & n. 6 (2001). We have held that "available administrative remedies are exhausted when the time limits for the prison's response set forth in the prison Grievance Procedures have expired," *Underwood*, 151 F.3d at 295. In *Underwood*, however, the inmate had "timely filed his grievances and appeals at each step of the . . . process." 151 F.3d at 295. Therefore, our holding in *Underwood* stands for the proposition that an inmate has exhausted administrative remedies when he follows each step of the prison grievance process without ever having received a response from the prison. Here, however, the TCJ grievance process explicitly sets out two steps, and Hicks failed to comply with the second step. Consequently, Hicks's failure to pursue his grievance remedy to conclusion constitutes a failure to exhaust his administrative remedies. *See Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

*Hicks v. Lingle*, 370 F. App'x 497, 498–99 (5th Cir. 2010). Another division of this Court

thoroughly explained and applied this point of law in granting summary judgment on the issue of exhaustion just weeks ago:

> Fifth Circuit case precedent states "that the requirement that a prisoner pursues the grievance remedy to conclusion 'does not fall by the wayside in the event that the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process. Instead, the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process.'" *Cantwell v. Sterling*, 2016 WL 7971768, *5 (W.D. Tex. May 18, 2016) (citing *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998)). Although Plaintiff's step 1 grievance went unanswered, under the law of this Circuit, Plaintiff was nevertheless required to file a step 2 grievance in the exhaustion process before filing suit. Thus, once the time period expired for TDCJ to file a response, Plaintiff's step 1 grievance was considered exhausted and he was required to file a step 2 grievance. It is undisputed from Plaintiff's sworn affidavit that he did not file a step 2 grievance. As such, Plaintiff has failed to properly exhaust his administrative remedies. *Cantwell*, 2016 WL 7971768, * 5 (W.D. Tex. May 18, 2016) (citing *Underwood*, 151 F.3d 292-295; *Hicks v. Lingle*, 370 F. App'x 497, 499 (5th Cir. 2010); *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015)). To the extent Plaintiff claims he could not file a step 2 grievance without a copy of the completed and answered step 1 grievance, Plaintiff's remedy in that situation was to either request a copy of the completed and answered step 1 from the grievance department if one existed or file another step 1 grievance. Plaintiff, again, concedes he never attempted to file a step 2 or another step 1 grievance. The competent summary judgment evidence demonstrates Plaintiff failed to exhaust his administrative remedies. As there is no genuine dispute of a material fact, Defendant Boyd's motion for summary judgment should be granted.

*Carter v. Boyd*, No. 9:19-CV-163, 2022 WL 3146319, at *4 (E.D. Tex. June 15, 2022), *report and recommendation adopted*, No. 9:19-CV-163, 2022 WL 3141871 (E.D. Tex. Aug. 5, 2022).

Thus, when Plaintiff's first Step 1 grievance was not returned to him on July 12, his claims were not fully exhausted as required for him to file suit immediately. Instead, he was required to do something more to exhaust his claims within the TDCJ system. This case does not require the Court to determine exactly what he should have done after the July 12 response deadline passed, because Plaintiff did not take any steps at all within the TDCJ system at that point with regard to the then-missing Step 1. He simply filed the Section 1983 complaint that he had already signed days earlier. (Dkt. #1 at 5.)

Plaintiff suggests that his second Step 1 grievance and the "bypass" Step 2 grievance satisfied the requirement that he pursue exhaustion of his first Step 1. He says that the TDCJ response to his first Step 1 grievance "was never provided to Plaintiff, inadvertently or otherwise – thus why he filed another Step 1 and Step 2 attempting to bypass Step 1." (Dkt. #126 at 3.) Contrary to Plaintiff's suggestion, those latter grievances could not possibly have been attempts to pursue exhaustion on the first Step 1. Neither of those documents mentions the first Step 1, inquires about its status, or asserts that it was missing or late. Nor could they, because they were both submitted <u>before</u> the first Step 1 response was even due. Instead, the purpose of the second Step 1 grievance appears to be an effort to have the intervening disciplinary conviction and punishments overturned. (Dkt. #124-2 at 181, 183.) And in the Step 2 grievance, Plaintiff explicitly said he was trying to bypass the Step 1 process to avoid retaliation—not because Step 1 grievances were not being returned. (Dkt. #126-4 at 1.)

Nor can Plaintiff's I-60 inquiries about missing grievances satisfy his requirement to exhaust the first Step 1. Even assuming the truth of Plaintiff's assertion that the first Step 1 response was never delivered to him at all,[5] it was overdue by July 13, 2021. Those I-60 exchanges clearly took place after Plaintiff was transferred to Telford on August 17, 2021. (*See* Dkt. #126-5 at 5.) In fact, one of them involved grievances that were not filed until September and October 2021 and references an upcoming response deadline of November 29, 2021. (*Id.* at 3; Dkt. #124-2 at 60–61 (grievance #2022019846 about difficulty making copies for this and other lawsuits), 26–27 (grievance #2022006205 about denial of due process by OIG officers).) Thus, those I-60s do not constitute a timely effort by Plaintiff to pursue exhaustion of a Step 1 that was overdue

---

[5]     The Court is not convinced that Plaintiff has created a genuine factual dispute about whether his Step 1 grievance was actually returned. But that determination is not necessary in this case, because the difference between a late response and a lack of response is not material where there is no dispute that Plaintiff filed his complaint when the response was already overdue.

more than a month before he submitted them. But more importantly, Plaintiff submitted them <u>after</u> he filed this lawsuit in July 2021. Post-filing exhaustion would not satisfy the PLRA. *See Rankin v. Pearson*, 612 F. App'x 204, 207 (5th Cir. 2015) (affirming dismissal of claims in amended complaint "because they were unexhausted at the time Rankin filed his original complaint"); *Patterson v. Doe*, No. 3:19-CV-616-HTW-LRA, 2020 WL 8766066, at *4 (S.D. Miss. Dec. 8, 2020), *report and recommendation adopted*, No. 3:19-CV-616-HTW-LGI, 2021 WL 833951 (S.D. Miss. Mar. 4, 2021) (dismissing for failure to exhaust where inmate submitted Step 2 grievance in July 2019, signed complaint in August 2019, and received grievance response in September 2019).

Thus, regardless of whether Plaintiff's first Step 1 was returned to him late or never returned to him at all, his failure to pursue its exhaustion before filing suit means that this grievance did not exhaust his claims for the purposes of the PLRA.

2.  Grievance #2021129833

Plaintiff's second Step 1 grievance arising from the same events concerning Marshall and Johnson (plus his intervening disciplinary conviction) was received by authorities on June 30, 2021. (Dkt. #124-2 at 180.) Although the Handbook guidelines would apparently have resulted in a 40-day response due date of August 9, 2021, it was marked with a response deadline of July 30, 2021. (*Id.*) That discrepancy is not addressed by either party, and it is not material to this case because Plaintiff filed his lawsuit before a response to this grievance was due based on either date. The TDCJ response to that grievance was stamped returned to Plaintiff on July 28, 2021, nine days after his complaint was filed. There is no indication in the record that he appealed that response, and any such appeal would necessarily have been submitted and decided after this suit was pending.

As explained above, post-filing exhaustion does not satisfy the PLRA. Accordingly, this

Court routinely dismisses for failure to exhaust in similar circumstances where the plaintiff filed suit after submitting a grievance but before receiving the response, while he "was aware that the process for this grievance was still on-going." *Covarrubias v. Foxworth*, No. 6:13CV812, 2017 WL 1159767, at *3 (E.D. Tex. Mar. 29, 2017). Accordingly, this grievance does not establish exhaustion of any of Plaintiff's claims.

      3.  The Step 2 Grievance

      The Step 2 grievance on which Plaintiff relies was signed on July 2, 2021, and stamped with the date July 7, 2021. (Dkt. #126-4 at 1.) Plaintiff cannot rely on this grievance to exhaust any claims against anyone. Plaintiff's theory about this Step 2 is not entirely clear, but there are only two possibilities for what became of it: (1) it was never processed or returned at all, or (2) it is the subject of the July 12 memo to Plaintiff indicating that a grievance he submitted was being rejected as improper.

      To the extent Plaintiff's position is that TDCJ simply failed to process or respond in any way to his Step 2 grievance, and that somehow relieved him of the burden of exhausting his claims, the United States Court of Appeals for the Fifth Circuit has held otherwise:

> As to grievance # 8983, Kidd argued in the district court that he timely filed a Step–2 grievance but that prison officials never returned a processed form to him. Kidd's conclusory assertions and production of an unprocessed Step–2 form in the district court failed to create a genuine dispute as to his exhaustion of this grievance. *See Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

*Kidd v. Livingston*, 463 F. App'x 311, 313 (5th Cir. 2012). Accordingly, this Court has repeatedly held that a plaintiff's submission of unprocessed grievance forms does not establish that the grievances were received by prison officials or otherwise overcome competent summary judgment evidence that the prisoner failed to exhaust his administrative remedies. *Porter v. Powell*, No. 1:19-CV-295, 2022 WL 1204090, at *1 (E.D. Tex. Apr. 22, 2022) (granting summary judgment despite

plaintiff's submission of an "unprocessed Step 1 grievance form" with "no indication that the grievance form was ever sent to officials"); *Howe v. Livingston*, No. 9:11CV162, 2012 WL 4127621, at \*7 (E.D. Tex. Sept. 17, 2012) (entering summary judgment where plaintiff produced grievance forms that "do not show that they were ever submitted to or received by the prison officials").

Moreover, Plaintiff filed this lawsuit just seventeen days after he signed the Step 2. TDCJ regulations advise that "[t]he Step 2 process may take up to 40 days to provide [the prisoner] a written response." (Dkt. #124-3 at 5.) If Plaintiff's position is that he never received any response at all to this Step 2, he filed suit before the response deadline had passed, and therefore failed to satisfy the pre-filing exhaustion requirement.

If (as seems more likely) the July 12 memo about an improper Step 2 grievance was the TDCJ's response to this Step 2,[6] the grievance still did not exhaust any claims. This grievance was not proper under TDCJ rules, as confirmed by the memo returning it, and the grievance itself acknowledged that it was a conscious, deliberate "bypass" of the required procedures. (Dkt. #126-4 at 1–2; Dkt. #126-5 at 1.) To satisfy the PLRA, a prisoner's efforts to exhaust must be in "[c]ompliance with prison grievance procedures." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Accordingly, there is no scenario in which this Step 2 grievance could constitute pre-filing exhaustion for any of Plaintiff's claims.

It is clear and indisputable from the record before the Court that Plaintiff filed Step 1

---

[6]    Despite its lack of apparent connection to Plaintiff's I-60 documents, Plaintiff includes this memo in a single exhibit with both I-60 inquiries and responses and discusses them jointly as if they constitute a single document. (Dkt. #126 at 3; Dkt. #126-5.) In the absence of any explanation for that joinder, or any obvious reason a memo about a Step 2 grievance from the TDCJ Central Grievance Office would be related to Telford Unit I-60 documents, the Court considers them as separate documents. That approach is further supported by the fact that the unrelated grievances referenced in one of the I-60 responses were filed in September and October 2021—months after the July 12, 2021 date on the memo. (Dkt. #126-5 at 1, 3; Dkt. #124-2 at 26–27, 60–61.)

grievances about some of his claims against Marshall and Johnson, but he did not exhaust the available process on either grievance. Marshall and Johnson are, therefore, entitled to summary judgment on those claims on the basis of Plaintiff's failure to exhaust administrative remedies.

B.  Remaining Claims

As recounted above in section I, Plaintiff also sues Defendant Townsend for his allegedly improper reaction when informed of Marshall's behavior, and he sues Defendants Marshall, Page, Adams, and Chapman for Eighth Amendment violations alleged to have happened on June 7 and 11–13 of 2021.

Plaintiff points out that the Step 2 grievance discussed above "reference[s]" Defendant Townsend and insinuates that it therefore exhausted his administrative remedies on his claim against Townsend. (Dkt. #126 at 7.) But for the reasons explained above, the Step 2 grievance did not constitute pre-filing exhaustion of any claims against anyone, including Townsend.

Plaintiff does not identify any grievance filed during the relevant time period about Marshall's interruption of his dental procedure or his claims against Page, Adams, or Chapman. He suggests that the reference in his first Step 1 grievance against Marshall and Johnson to "two officers" who were "unprotected" is somehow sufficient to exhaust his remedies on the claims against the latter Defendants. (Dkt. #126 at 7–8.) He says "had the Unit done a proper investigation of the issue, the Unit and the [TDCJ] would have been alerted to the problem and the officers involved, including all named defendants herein." (*Id.*)

But the portion of text in the grievance to which Petitioner alludes is about the incidents of May 25, 2021, leading up to Johnson's alleged use of excessive force, and says simply "getting to 3 Building two inmates made threats I jerked away scared due to the fact the two officers were 'unprotected' that's when Srg. Johnson tripped & slambed me head first into the ground . . .." (Dkt.

#124-2 at 160.) It has nothing whatsoever to do with the separate unconstitutional force or conditions alleged against Marshall, Page, Adams, and Chapman, all of which are alleged to have occurred more than a week <u>after</u> Plaintiff signed that grievance. Accordingly, none of those claims are exhausted.

    C.  <u>Need for Additional Discovery or Hearing</u>

Plaintiff asserts that "discovery is still required as Defendants appear not to have provided the relevant documents to [Plaintiff's counsel] and to his client, despite at least two Court orders requiring otherwise." (Dkt. #126 at 1.) But he does not identify any specific documents or category of documents that would support his position in this case and were not produced by Defendants or already in his possession. He says that "it is not clear if the Office of Inspector General/Ombudsman/Offender protective Incident ('OPI') documents have been produced in their entirety." (*Id.* at 2.) But he does not explain how documents outside the TDCJ's two-step grievance process would be relevant to whether Plaintiff exhausted that process.

Plaintiff also complains that Defendants did not produce in discovery the TDCJ rejection of his improper Step 2 grievance or the I-60 requests and responses Plaintiff received after his transfer to the Telford Unit. (Dkt. #126 at 3; Dkt. #126-5.) But he has clearly not been prejudiced by that omission because he independently had those documents in his possession. Moreover, evidence of improper, unprocessed grievances and I-60 records cannot establish exhaustion of administrative remedies when proper use of the grievance process is required. *See Bisby v. Garza*, 342 F. App'x 969, 972 (5th Cir. 2009) (holding that multiple I–60 forms complaining about the conditions alleged in lawsuit did not exhaust administrative remedies because "I–60s are not a part of the two-step TDCJ formal grievance procedure [a plaintiff] is required to exhaust"); *Sanchez v. Grounds*, No. 5:14CV64, 2015 WL 1456068, at *5 (E.D. Tex. Mar. 30, 2015) ("The letters and I

-60 request forms which Sanchez attaches to his response to the motion for summary judgment do not exhaust his administrative remedies because they are not Step One or Step Two grievances.").

Plaintiff has not moved to compel any discovery in this case, and he does not now identify any further production that is necessary to a determination of whether he properly exhausted his current claims through the TDCJ grievance system before filing suit. Accordingly, his suggestion that additional discovery is required is unavailing.

Nor has Plaintiff established that a hearing is necessary or appropriate before ruling on Defendants' motion. Whether Plaintiff filed grievances about his claims and fully exhausted those grievances before filing suit, as required by the PLRA, can be determined in this case solely on the proof in the record. It is clear from the record that Plaintiff did not exhaust his administrative remedies before filing this lawsuit, and he has failed to demonstrate how an evidentiary hearing would alter that conclusion. Plaintiff is not entitled to a hearing where the needs of justice do not require one.

Finally, the ongoing retaliation Plaintiff claims to be experiencing has no bearing on his exhaustion of administrative remedies for the claims already before the Court. If Plaintiff has suffered any constitutional violations after filing this suit, he may make them the focus of a new lawsuit.

## VI. Conclusion

The proof in the record establishes that Plaintiff did not exhaust his administrative remedies before he filed this lawsuit, and Plaintiff has produced no competent evidence to the contrary. Thus, a review of summary judgment evidence in this case, viewed in the light most favorable to Plaintiff, shows that the relevant evidence could not lead to different factual findings and conclusions. In other words, summary judgment for Defendants is appropriate.

<u>RECOMMENDATION</u>

Accordingly, the undersigned recommends that Defendants' amended motion for summary judgment (Dkt. #124) be **GRANTED.** Plaintiff's lawsuit should be **DISMISSED** without prejudice for failure to exhaust administrative remedies before filing suit.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 30th day of August, 2022.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE